Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd., Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email:  mtc@angstman.com

Attorney for Defendants

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>RINALDO AND MAILE HUNT,<br><br>        Debtors. | Bankr. Case No.: 20-00137-JDP |
| ALISHA LIN, an individual and DENNIS LIN, an individual,<br><br>        Plaintiffs,<br><br>vs.<br><br>RINALDO HUNT, an individual and MAILE HUNT, an individual,<br><br>        Defendants. | Adv. Case No.  20-06015-JDP<br><br>DECLARATION OF RINALDO HUNT |

Pursuant to 28 U.S.C. §1746, the undersigned submits the following Declaration, signed under penalty of perjury, in support of the Motion for Summary Judgment submitted by the Defendants in this adversary proceeding.

1.      My name is Rinaldo Hunt, I am of sufficient age and competency to testify to the matters stated herein of which I have personal knowledge.

2.      I am a debtor in the Bankruptcy case and a Defendant in the Adversary Proceeding.

3.      I did not make any false statements with the intention of deceiving the Lins.  At the time I was communicating with the Lins about a bridge loan, I represented to the Lins that we would have about $110,000.00 in cash in our bank account.  We received the $130,000.00 transfer from Lins on July 12, 2017.  Between June 29, 2017, when I represented we would have $110k in cash, and July 12, 2017, our bank account balance fluctuated between $136k and $107k – exactly what I told Lins it would be.  *See Exhibit A*.  My statement about our account balance was accurate.

4.      At the time I first began communicating with Dennis Lin regarding bridge financing for the purchase of the Irvine, California home, I had several business deals that I anticipated closing in the end of the fourth quarter of the year and expected an influx of funds from those deals.

5.      At the time I provided wire transfer information to Dennis Lin on July 6, 2017, I had a signed Purchase and Sale Agreement for Commercial Real Estate that was made for the Millcreek project located in Salt Lake City, Utah.  *See Exhibit B*.  That contract required a closing within approximately 5 months of the contract, or by December 2017.  Had that closing occurred, I would have received a commission of 3% of the purchase price, or approximately $165,000.00, with which I anticipated repaying the Lins.  Unfortunately, the Millcreek project was repeatedly postponed. Ultimately, the Seller through its agent, gave written notice to Buyer that the agreement was no longer valid.  As a result, I did not receive the funds I was anticipating.

6.      Prior to making the loan, the Lins never asked, and I never confirmed, that my wife and I had previously filed bankruptcy.  I am unaware of any requirement or affirmative duty that I spontaneously provide that information in the absence of a request or inquiry by Lins.

7.      A Sheriff's sale of personal property belonging to me and my wife, Maile, took place on October 10, 2019 (more than 2 years after the Lins loan was made).  At that sale, the sale of our items netted less than $5,000.00.  *See Exhibit C*, return on Sheriff's Sale.  However, prior

to the sale, my wife and I had the items appraised, and they were valued in excess of $93,000.00.

*See **Exhibit D***, appraisals.    The Sheriff's Sale ultimately yielded far less in funds than the value of the items which were sold.  My statements to this effect, in both the state case and our bankruptcy case, were true.

8.    As provided by Idaho Code § 9-1406, I declare under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct to the best of my knowledge and belief.

DATED this 22nd day of September, 2020

_____/s/ Rinaldo Hunt_____
RINALDO HUNT

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23RD day of September, 2020, I filed the foregoing DECLARATION electronically  through  the  CM/ECF system,  which  caused  the  following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew T. Christensen              mtc@angstman.com
Joseph M. Wager                     wager@mwsslawyers.com

Any others as listed on the Court's ECF Notice.

_____/s/ Matt Christensen_____
Matthew T. Christensen

3

# EXHIBIT A



**Uni-Statement**

Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

P.O. Box 1800
Saint Paul, Minnesota 55101-0800

3903     TRN                          X     ST01

Page 1 of 9

000054433 02 SP      106481136283865 E
MAILE N HUNT
RINALDO HUNT
305 MAGNET
IRVINE CA 92618-0856

☎                                                       *To Contact U.S. Bank*

**By Phone:**                                      *1-800-US BANKS*
                                                        *(1-800-872-2657)*

**U.S. Bank accepts Relay Calls**

**Internet:**                                      *usbank.com*

---

## NEWS FOR YOU

Effective July 16, 2017 Deluxe check box quantities will change to the following:

| Check Product Quantity | Old Quantity | New Quantity |
|---|---|---|
| Standard Full Quantity | 120 | 100 |
| *Specialty Gray, Green, Lemon, Mint* | 150 | 125 |
| *Denver Broncos* | 150 | 125 |
| *Intro-Paks* | 50 | 40 |
| *Mini-Paks* | 30 | 25 |
| *Student Checking* | No change | |

If you have questions about your check order please contact U.S. Bank 24-Hour Banking at 800.USBANKS (800.872.2657). We accept relay calls.

---

## INFORMATION YOU SHOULD KNOW

**Important changes are coming to your Online and Mobile Financial Services Agreement.** Review the changes being made by clicking on the banner on your My Accounts page in Online Banking to learn more.

**Effective August 14th 2017 the following sections will be updated in the *"Consumer Pricing Information"* brochure:**

- **Foreign Checks/Currency Fees -** Clarifying explanation of potential fees and the review/processing of checks deposited in foreign currency on foreign banks, to read as follows:

  Checks Deposited in Foreign Currency on Foreign Banks:  All checks subject to review.  If item must be processed on a collection basis, U.S. Bank will disclose additional fees prior to assessing.  See Foreign Check Collection section for potential fees.

- **Foreign Check Collection  (incoming/outgoing) -** Clarifying explanation by adding the following:

  Additional fees assessed by Foreign Banks will be deducted from the check proceeds.  Exchange rate adjustments will apply on each item at the time of processing.

- **Checking Package Options - Gold Checking:**  Clarifying disclosure pertaining to waiving the monthly maintenance fee with an open U.S. Bank personal loan, line or credit card noted as footnote 5 to read as follows:

  Qualifying accounts include U.S.  Bank Premier Line, home mortgages, home equity loans and lines of credit, personal purpose loans and activated credit cards.  (U.S. Bank Reserve Line of Credit and student loans are excluded).  Mortgage and credit products are subject to eligibility requirements and normal credit approval and may be subject to additional charges such as annual fees.  Please refer to the credit agreement for full details.

As of August 14th 2017 you may pick up a copy of the updated *"Consumer Pricing Information"* brochure at your local branch, view a copy at usbank.com or call 1-800-USBANKS (1-800-872-2657) to request a copy.



## BALANCE YOUR ACCOUNT

To keep track of all your transactions, you should balance your account every month. Please examine this statement immediately. We will assume that the balance and transactions shown are correct unless you notify us of any error.

**Outstanding Deposits**

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
| TOTAL | $     |

**Outstanding Withdrawals**

| DATE | AMOUNT |
|------|--------|
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
| TOTAL | $     |

1. List any deposits that do not appear on your statement in the Outstanding Deposits section at the left. Record the total.

2. Check off in your checkbook register all checks, withdrawals (including Debit Card and ATM) and automatic payments that appear on your statement. Withdrawals that are NOT checked off should be recorded in the Outstanding Withdrawals section at the left. Record the total.

3. Enter the ending balance shown on this statement.                     $_____

4. Enter the total deposits recorded in the Outstanding Deposits section.   $_____

5. Total lines 3 and 4.                                                    $_____

6. Enter the total withdrawals recorded in the Outstanding Withdrawals section.   $_____

7. Subtract line 6 from line 5. This is your balance.                      $_____

8. Enter in your register and subtract from your register balance any checks, withdrawals or other debits (including fees, if any) that appear on your statement but have not been recorded in your register.

9. Enter in your register and add to your register balance any deposits or other credits (including interest, if any) that appear in your statement but have not been recorded in your register.

10. The balance in your register should be the same as the balance shown in #7. If it does not match, review and check all figures used, and check the addition and subtraction in your register. If necessary, review and balance your statement from the previous month.

### IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS
**In Case of Errors or Questions About Your Checking, Savings, ATM, Debit Card, ACH, Bill Pay and Other Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt, we must hear from you no later than 60 days* after we sent you the FIRST statement on which the error or problem appeared. Telephone us at the number listed on the front of this statement or write to us at U.S. Bank P.O. Box 64991 St. Paul, MN 55164-9505.
- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it we hin 10 business days, we may not credit your account.
    *Please note: Paper draft and paper check claims must be disputed within 30 days per Your Deposit Account Agreement.

### IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

### CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE
*What To Do If You Think You Find A Mistake on Your Statement*
If you think there is an error on your statement, write to us at:
U.S. Bank, P.O. Box 3528, Oshkosh, WI 54903-3528.
In your letter, give us the following information:
- *Account information:* Your name and account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.
You must contact us within 60 days after the error appeared on your statement.
You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to inves igate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, he following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.
**Reserve Line Balance Computation Method:** To determine your **Balance Subject to Interest Rate**, use the dates and balances provided in the Reserve Line Balance Summary section. The date next to the first Balance Subject to Interest is day one for that balance and is applicable up to (but not including) the date of the next balance (if there is one). We multiply the Balance Subject to Interest by the number of days it is applicable and add them up to get the same number of days in the billing cycle. We then divide the result by the number of billing days in the cycle. This is your **Balance Subject to Interest Rate**. Any unpaid interest charges and unpaid fees are not included in the Balance Subject to Interest. The ***INTEREST CHARGE*** begins from the date of each advance.

### REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES
We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

### CONSUMER REPORT DISPUTES
We may report information about negative account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 844.624.8230 or by writing to: U.S. Bank Attn: CRA Management, P.O. Box 3447, Oshkosh, WI 54903-3447. In order for us to assist you with your dispute, you must provide: your name, address and phone number; he account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (e.g., affidavit of identity theft), if applicable.



EQUAL HOUSING
LENDER

Member FDIC



MAILE N HUNT
RINALDO HUNT
365 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**

Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 2 of 9



| U.S. BANK PLATINUM CHECKING | | *Member FDIC* |
|---|---|---|

U.S. Bank National Association — Account Number ▮▮▮▮

### Account Summary

| | | | | |
|---|---|---|---|---|
| Beginning Balance on Jun 23 | $ ▮▮▮ | Annual Percentage Yield Earned | | 0.01% |
| Deposits / Credits | ▮▮▮ | Interest Earned this Period | $ | 2.58 |
| Card Withdrawals | ▮▮▮ - | Interest Paid this Year | $ | 2.78 |
| Other Withdrawals | ▮▮▮ - | Number of Days in Statement Period | | 33 |
| Checks Paid | ▮▮▮ - | | | |
| **Ending Balance on Jul 25, 2017** | $ ▮▮▮ | | | |

### *Overdraft Protection*

The following account(s) are linked to your checking account for Overdraft Protection. The account(s) are listed in the order that they would be used to transfer funds to your checking account if the available account balance is negative. If you wish to make changes to your Overdraft Protection account order; log in to your account at usbank.com, visit your local U.S. Bank branch or call U.S. Bank 24-Hour Banking at the number listed above.

**1st Position:** U.S. Bank Platinum Package Money Market Savings account ending in 2259

### Deposits / Credits



| Date | Description of Transaction | Ref Number | Amount |
|---|---|---|---|
| Jul 12 | Internet Banking Transfer  From Account 153152123037 | | 130,000.00 |
| | **Total Deposits / Credits** | $ | ▮▮▮ |

### Card Withdrawals

Card Number: xxxx-xxxx-xxxx-5219

| Date | Description of Transaction | Ref Number | Amount |
|---|---|---|---|

**U.S. bank**

MAILE N HUNT
RINALDO 2013
305 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**

Account Number:
███████

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 3 of 9

## U.S. BANK PLATINUM CHECKING (CONTINUED)

U.S. Bank National Association

**Account Number** ███████

### Card Withdrawals (continued)

Card Number: xxxx-xxxx-xxxx-5219

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|





MAILE N HUNT
RINALDO HUNT
365 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**



## U.S. BANK PLATINUM CHECKING                                    (CONTINUED)
U.S. Bank National Association                          **Account Number** ████

**Card Withdrawals (continued)**

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|



Card 5219  Withdrawals Subtotal          $

MAILE N HUNT
RINALDO HUNT
895 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**

Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 5 of 9

## U.S. BANK PLATINUM CHECKING                                    (CONTINUED)
U.S. Bank National Association                              Account Number

**Card Withdrawals (continued)**
Card Number: xxxx-xxxx-xxxx-0730

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|-----------|--------|





MAILE N HUNT
RINALDO HUNT
895 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**

Account Number:



Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 6 of 9

## U.S. BANK PLATINUM CHECKING                                      (CONTINUED)

U.S. Bank National Association                                    **Account Number** 

**Card Withdrawals (continued)**

Card Number: xxxx-xxxx-xxxx-0730

| Date | Description of Transaction | Ref Number | Amount |
|------|----------------------------|------------|--------|

MAILE N HUNT
RINALDO HUNT
805 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**

Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 7 of 9

## U.S. BANK PLATINUM CHECKING (CONTINUED)

U.S. Bank National Association

**Account Number**

### Card Withdrawals (continued)

Card Number: xxxx-xxxx-xxxx-0730

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|





MAILE N HUNT
RINALDO HUNT
895 MAGNET
IRVINE CA  92618-0856

**Uni-Statement**

Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017



## U.S. BANK PLATINUM CHECKING    (CONTINUED)

U.S. Bank National Association

**Account Number** ██████████

### Card Withdrawals (continued)

Card Number: xxxx-xxxx-xxxx-0730

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|
| ████ ████ | ████████ ███ █ █████ | | |

| | | |
|---|---|---|
| **Card 0730  Withdrawals Subtotal** | $ | ██████ |
| **Total Card Withdrawals** | $ | ██████ |

### Other Withdrawals

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|



**us bank**

MAILE N HUNT
RINALDO HUNT
PO5 MAGNET
IRVINE CA 92618-0856

**Uni-Statement**
Account Number:

Statement Period:
Jun 23, 2017
through
Jul 25, 2017

Page 9 of 9

## U.S. BANK PLATINUM CHECKING                                    (CONTINUED)
U.S. Bank National Association                                    Account Number

### Other Withdrawals (continued)

| Date | Description of Transaction | Ref Number | Amount |
|------|---------------------------|------------|--------|
| | | | |
| | | | |

| | Total Other Withdrawals | $ | |
|--|--------------------------|---|--|

### Checks Presented Conventionally



| Check | Date | Ref Number | Amount | Check | Date | Ref Number | Amount |
|-------|------|-----------|--------|-------|------|-----------|--------|
| | | | | | | | |

\* Gap in check sequence                    Conventional Checks Paid (9)    $

### Balance Summary

| Date | Ending Balance | Date | Ending Balance | Date | Ending Balance |
|------|---------------|------|---------------|------|---------------|
| Jun 23 | 928.74 | Jul 6 | 124,290.82 | Jul 17 | 227,105.06 |
| Jun 26 | 386.36 | Jul 7 | 124,132.35 | Jul 18 | 227,052.06 |
| Jun 27 | 1,591.56 | Jul 10 | 107,285.41 | Jul 19 | 226,756.46 |
| Jun 28 | 1,429.81 | Jul 11 | 107,031.20 | Jul 20 | 226,751.75 |
| Jun 29 | 1,203.44 | Jul 12 | 236,490.67 | Jul 21 | 226,750.25 |
| Jun 30 | 136,399.27 | Jul 13 | 235,654.34 | Jul 24 | 226,195.88 |
| Jul 3 | 135,288.82 | Jul 14 | 228,466.00 | Jul 25 | 225,620.16 |
| Jul 5 | 126,764.32 | | | | |

Balances only appear for days reflecting change.

# EXHIBIT B

# PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE

This is a legally binding Contract. This form has been prepared by counsel for the Utah CCIM Chapter. Parties to this Purchase and Sale Agreement for Commercial Real Estate (the "PSA") may agree, in writing, to alter or delete provisions of this PSA. Seek advice from your attorney or tax advisor before entering into a binding Contract.

## FUNDAMENTAL TERMS OF OFFER TO PURCHASE
## UNIMPROVED LAND

"REFERENCE DATE": June 27, 2017

"SELLER": Windriver Investments, LC

    With Notices to be given at: Street Address: 5640 S. Riley Ln

        City, State, Zip: Murray, UT 84107

        Fax, Email : ███████

"BUYER": MW Development Enterprises, LLC *and assigns*

    With Notices to be given at: Street Address: 2020 Broadway Blvd

        City, State, Zip: Kansas City, MO 64108

        Fax, Email: ███████

"PROPERTY": Name/General Description: Approximately 7.05 acres

    Address: 4186 South Main Street
    City: Millcreek        County: Salt Lake    Utah, Zip: 84107
    County Tax Parcel #: 2101228015
    Source of legal description (check applicable box):
        [X] TITLE COMMITMENT (See Section 7.1)
        [ ] SURVEY (See Survey Addendum, if applicable)
    The Property also includes certain rights and interests described in Section 2.

"DEED":    [X] Special Warranty Deed    [ ] General Warranty Deed (check box)    [ ] Other _____

"TITLE POLICY":    [X] Standard Coverage    [ ] Extended Coverage

"PURCHASE PRICE": $5,500,000

"EARNEST MONEY DEPOSIT": $25,000 in the form of: [X] Wire Transfer [ ] Buyer's Check to be deposited with [ ] Buyer's Brokerage [X] Title Company/Escrow Agent [ ] Other _____.  Buyer agrees to deliver the Earnest Money Deposit no later than four (4) calendar days after Acceptance (as defined in Section 23). The Brokerage or Other depository shall deposit the Earnest Money into the Real Estate Trust Account no later than four (4) calendar days from receipt.

"SELLER DISCLOSURE DEADLINE":        Ten (10) calendar days after full execution of this Purchase and Sale Agreement

"DUE DILIGENCE DEADLINE":        One Hundred and Twenty (120) calendar days after full execution of this Purchase and Sale Agreement

"SETTLEMENT DEADLINE":        One Hundred and Thirty-Five (135) calendar days after full execution of this Purchase and Sale Agreement or Fifteen (15) days after the expiration of final option exercised

"SELLER'S AGENT":        Rusty Bollow / Cameron Carpenter

"SELLER'S BROKERAGE":        Newmark Grubb Acres / Commerce Real Estate Solutions

"BUYER'S AGENT":        Rinaldo Hunt

Seller's Initials _____ Date 7/3/17        Buyer's Initials _____ Date 7/1/17

"BUYER'S BROKERAGE":                    <u>RH Brokerage Services</u>

"MEDIATION": Seller and Buyer [X] DO [  ] DO NOT elect to mediate in accordance with the provisions of Section 15. [check box] ADDITIONAL TERMS. There [X] ARE [  ] ARE NOT addenda to this PSA containing additional terms. If there are, the terms of the following (each, an "Addendum" or collectively, the "Addenda") are incorporated into this PSA by this reference: [check box]

[  ] Seller Financing                [  ] Financing Contingency            [  ] ALTA Survey
[  ] Assumption of Financing        [X] Other Addendum

This Area Intentionally Left Blank

Seller's Initials _____ Date 7/2/17            Buyer's Initials _____ Date 7/1/17

## OFFER TO PURCHASE

1.   **OFFER TO PURCHASE.**  Buyer offers to purchase the Property from Seller for the Purchase Price and otherwise upon the terms and subject to the conditions set forth in this PSA. Certain capitalized terms used in this PSA are defined in Section 27.

2.   **PROPERTY.**  Unless excluded by another provision of this PSA or an Addendum or Counteroffer, the Property includes: (a) all fixtures presently attached to the Property; (b) all personal property owned by Seller and used primarily in connection with the Property; (c) Seller's right, if any, in any names or trademarks under which the Property is operated, but not including the generic name or trademarks of Seller; and (d) all rights and easements appurtenant to the Property; and (e) all water rights and/or water shares, if any, that are the source for culinary or secondary water used in connection with the Property.

3.   **PAYMENT OF PURCHASE PRICE.**  Unless the Loan Assumption Addendum or the Seller Financing Addendum is part of this PSA, the Purchase Price and all other sums shall be paid by federal wire transfer or other collected funds at the Closing.

4.   **SETTLEMENT AND CLOSING.**  Settlement shall take place on the Settlement Deadline or on another date upon which the Parties agree in writing.  "Settlement" shall be deemed to have occurred only when all of the following have been fully completed:  (a) Buyer and Seller have signed and delivered to the Escrow Agent all documents required by this PSA, by any lender, or by Applicable Law; (b) any monies required to be paid by Buyer under this PSA (except for the proceeds of any new loan) have been delivered by Buyer to the Escrow Agent; and (c) any monies required to be paid by Seller under this PSA have been delivered by Seller to the Escrow Agent. Seller and Buyer shall each pay one-half (1/2) of the fee charged by the Escrow Agent for its services in the Settlement and Closing. Taxes and assessments for the current year, rents, association dues, utilities and charges accrued under contracts relating to the Property and assumed by Buyer, operating expenses relating to the Property and interest on any assumed obligations shall be prorated as of 11:59 p.m. on the day prior to Settlement unless otherwise agreed to in a settlement statement or other writing executed by the Parties. Tenant deposits (including, but not limited to, security deposits and prepared rents) shall be paid or credited by Seller to Buyer at Settlement.  "Closing" means consummation of the transaction contemplated by this PSA and shall be deemed to have occurred only when:  (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the lender to the Escrow Agent; and (c) the applicable Closing documents have been recorded in the Official Records of the County Recorder of the County in which the Property is located. If a lender is funding a portion of the Purchase Price, loan proceeds must be delivered to Escrow Agent not later than the end of the third (3rd) Business Day following completion of Settlement or Buyer shall be in default.

5.   **POSSESSION.**  Seller shall deliver physical possession of the Property to Buyer within twenty-four (24) hours following Closing or at such other date and time as is specified in an Addendum.

6.   **CONFIRMATION OF BROKERAGE FEES AND AGENCY DISCLOSURE.**  Buyer and Seller each acknowledge prior receipt of written agency disclosure provided by their respective Agents that has disclosed the agency relationships that are confirmed in the Fundamental Terms. Buyer and Seller further acknowledge that brokerage fees due as a result of this transaction are being paid based upon the terms of a separate written agreement.  If an Agent or Brokerage represents both Seller and Buyer, then he, she or it shall constitute a "Limited Agent," as defined in applicable regulations of the Utah Division of Real Estate.

7.   **DEED AND TITLE INSURANCE.**

   7.1   **Deed.**  Seller will convey title to Buyer at Closing by statutory form of Deed specified in the Fundamental Terms. Buyer agrees to accept title to the Property subject to:  (a) the Permitted Exceptions (defined below); (b) any lease or property management agreement timely disclosed to Buyer pursuant to Section 8 below and not object to by Buyer prior to the Due Diligence Deadline; and (c) any title exception arising by, through or under Buyer.

   7.2   **Title Policy.**  At Settlement, Seller agrees to pay for the Title Policy specified in the Fundamental Terms, in the amount of the Purchase Price insuring title to the Property subject only to the Permitted Exceptions (the "Title Policy"). Buyer, at its sole option, cost and expense, may elect to obtain additional coverage or additional specific endorsements. Notwithstanding anything the PSA to the contrary, in no event shall Seller be required to pay more than twice the cost of a standard title insurance policy (exclusive of endorsements) for an extended title insurance policy.

Seller's Initials _____ Date 7/2/17     Buyer's Initials _OH_ Date 7/4/17

8.   **SELLER DISCLOSURES.**  No later than the Seller Disclosure Deadline, Seller shall provide to Buyer the following (the "Seller Disclosures"):

(a)  a preliminary title commitment (the "Title Commitment") from a title company selected by Seller (the "Title Company"), together with a copy of each instrument, agreement or document listed as an exception to title in such Title Commitment;

(b)  a true and correct copy of all leases, management agreements and contracts affecting the Property;

(c)  a Seller property condition disclosure for the Property signed and dated by Seller;

(d)  all copies in Seller's possession of studies and/or reports which have previously been performed in connection with or for the Property, including without limitation, environmental reports, soils studies, seismic studies, physical inspection reports, site plans and surveys, and identification of such studies of which Seller is aware but that are not in Seller's possession;

(e)  all copies in Seller's possession of written notices relating to a violation of Applicable Law including, without limitation, Environmental Law and laws relating to land use, zoning or compliance with building codes;

(f)  evidence of any water rights and/or water shares used in connection with the Property; and

(g)  all other documents described at Seller's Disclosures in any Addenda or Counteroffers to this PSA.

9.   **BUYER'S DUE DILIGENCE AND RIGHT TO CANCEL.**  No later than the Due Diligence Deadline, Buyer, at its sole cost and expense, shall:  (a) conduct such Due Diligence as it deems necessary and appropriate; and (b) determine if the results of its Due Diligence are acceptable.  The Due Diligence Deadline is subject to extension as set forth in any Addendum attached hereto.  If, prior to Closing, the Title Company issues a supplemental or amended title report showing additional title exceptions (the "Amended Title Commitment"), Due Diligence Deadline shall be extended five (5) business days from the date of Buyer's receipt of such Amended Title Commitment.

9.1  **Title and Survey Matters.**  In conducting its due diligence prior to the Due Diligence Deadline, Buyer may review the Title Commitment, Survey and all other Seller Disclosures as referenced in Section 8.  Seller agrees to cooperate with Buyer in connection with Buyer's Due Diligence investigation by providing additional information or documentation reasonably requested by Buyer.

(a)  **Removal of Monetary Liens.**  Notwithstanding anything in this PSA to the contrary, unless specifically set forth in an Addendum or Counteroffer, Seller covenants and agrees that all Monetary Liens shall be removed by Seller at Closing or insured against by the Title Insurer at Seller's sole cost and expense, regardless of whether Buyer has objected to such Monetary Lien(s).  This provision will survive Closing.

9.2  **Inspection.**  In conducting its Due Diligence prior to the Due Diligence Deadline, and at any time thereafter until Settlement, Buyer may, upon reasonable notice and at reasonable times, conduct inspections, appraisals and for tests on the Property.  Buyer shall enter to conduct such inspections and tests on the Property only during reasonable hours and with reasonable prior notice to Seller.  Seller shall have the right to accompany Buyer and any of its agents on the Property at all times.  All inspections and tests shall be conducted in a manner that does not unreasonably disrupt the activities and business of Seller and its tenants, and Buyer shall indemnify, hold harmless and defend Seller, its tenants and their employees, invitees and guests from and against any and all liabilities, claims, actions or damages (including reasonable attorneys' fees and court cost)  which arise from, are caused by, or are in any manner connected with Buyer's Due Diligence and caused by or arising from the actions of Buyer, including, without limitation, claims for payment for inspection services, claims for mechanic's liens, claims for physical damage to the Property and claims from personal injury.

9.3  Buyer's Right to Cancel or Resolve Objections.

(a)  **Right to Cancel or Object.**  If Buyer, in Buyer's sole discretion, determines that the results of the Buyer's Due Diligence are not acceptable, then, not later than the Due Diligence Deadline, Buyer shall either:  (a) cancel this PSA by providing written notice to Seller, in which event the Earnest Money Deposit shall be released to Buyer; or (b) provide to Seller one or more written notices setting forth Buyer's objections in reasonable detail (the "Objections").

(b)  **Failure to Respond.**  If Buyer noes not timely take either of the actions described in Section 9.2, then the results of the Buyer's Due Diligence shall be deemed approved by Buyer, all Objections which Buyer could have asserted shall be deemed waived by Buyer and, unless another condition or contingency set forth in an Addendum or Counteroffer remains unsatisfied, the Earnest Money Deposit shall become nonrefundable except in the event of Seller's default.

(c)  **Response by Seller.**  If Buyer timely provides Objections to Seller, Buyer and Seller shall have five (5) business days after Seller's receipt of the Objections (the "Response Period") in which to agree in writing upon the manner

Page 4 of 13          Seller's Initials _____ Date 7/2/17          Buyer's Initials _____ Date 7/1/17

of resolving the Objections. Seller may, but shall not be required to, resolve the Objections. If Buyer and Seller have not agreed in writing upon the manner of resolving the Objections prior to the expiration of the Response Period, Buyer may cancel this PSA by delivering written notice to Seller not later than five (5) days after the end of the Response Period (the "Termination Date"); whereupon the Earnest Money Deposit shall be released to Buyer and neither Party shall have any further rights, obligations or liabilities under this PSA except as expressly set forth herein. If this PSA is not canceled by Buyer under this Section, the Objections shall be deemed waived by Buyer and the Earnest Money Deposit shall become nonrefundable except upon Seller's default. If the Response Period extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) business days following the extended Termination Date. If the Termination Date extends past the Settlement Deadline, the Settlement Deadline shall be extended to the date that is five (5) business days following such Termination Date.

10. **SELLER REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants that the following statements are true and complete as of the Effective Date and shall be true and complete as of the Settlement and Closing. The following representations and warranties shall survive the date of Closing for one (1) year, and shall terminate and be null and void if or to the extend a legal action has not been filed in a court of competent jurisdiction prior to the expiration of such one (1) year period;

(a) there is no action, suit, administrative proceeding or other proceeding pending in any court or before any arbitrator of any kind or before or by any governmental body or, to Seller's knowledge, threatened against Seller and/or the Property which may adversely affect the transaction contemplated in this PSA;

(b) all work which has been or will be performed in, on or about the Property, or materials furnished to the Property which might in any circumstances give rise to a mechanic's or materialman's lien (other than relating to work performed by Buyer), will be paid and all necessary waivers of rights to a mechanic's or materialman's lien for such work will be obtained;

(c) Seller has not received any written notice or citation indicating that the Property is in material violation of Applicable Law;

(d) Neither Seller nor, to Seller's knowledge, any other Person, has ever caused or permitted any Hazardous Material to be placed, held, located, released or disposed of on, under, or at the Property or any part thereof in violation of Applicable Law and, to Seller's knowledge, no Hazardous Material is located on, under or at the Property in violation of Applicable Law;

(e) To Seller's knowledge, the consummation of the transactions contemplated by this PSA and the compliance by Seller with the terms of this PSA do and will not conflict with or result in a material breach of any of the terms or provisions of any agreement, arrangement, undertaking, accord, document, or instrument to which Seller is a party or by which seller or the Property is bound; and

(f) Seller is not a "foreign person" as that term is defined in Code Section 1445 and shall deposit with Escrow Agent at or prior to Settlement, an affidavit in such form as may be required by the U.S. Internal Revenue Service, setting forth Seller's full name, address and taxpayer identification number and stating under penalty of perjury that Seller is not a "foreign person" as so defined.

(g) Except as set forth in writing upon delivery and to Seller's knowledge, all copies Seller provides to Buyer under Section 8 above are true and correct copies of the originals or copies within Seller's possession.

(h) To the knowledge of Seller, the Property is in compliance with all Applicable Law.

(i) To the knowledge of Seller and except as disclosed by environmental reports provided to Buyer, no Hazardous Material is present in, on or under the Property or nay nearby real property which could migrate to the Property. Seller has not used the Property or any part thereof, and to its knowledge no other Person has used the Property or any part thereof, for the production, processing, manufacture, generation, treatment, handling, storage, transportation or disposal of Hazardous Material while the Property has been owned by Seller.

11. **NO OTHER REPRESENTATIONS AND WARRANTIES.** Except as expressly set forth in this PSA or in an Addendum or Counteroffer; (a) Buyer is purchasing the Property, and the Property shall be conveyed and transferred to Buyer, "AS IS, WEHRE IS, AND WITH ALL FAULTS" and specifically and expressly without any warranties, representations or guarantees, either express or implied, of any kind, nature or type whatsoever from or on behalf of Seller; and (b) Seller has not, does not and will not, with respect to the Property, make any warranties or representations, express or implied, or arising by operation of law, including, but in no way limited to, any warranty of condition or merchantability or with respect to the value, profitability, developability or marketability of the Property.

12. **CHANGES PENDING CLOSING.** Between the Effective Date and the date of Closing, and except as and to the extent otherwise permitted by an Addendum hereto, Seller: (a) shall (i) comply with all Applicable Law, and (ii) continue and maintain all current casualty and liability insurance policies on the Property; and (b) shall not (i) execute any lease affecting the Property except as set forth in any Addendum attached hereto; (ii) create or suffer to be created any further Monetary Lien against the Property; (iii) make any substantial alterations or improvements to the Property; and (iv) except

Seller's Initials _____ Date 7/2/17    Buyer's Initials _CH_ Date 7/1/17

for the usage and storage of normal and customary amounts of Hazardous Material found in cleaning and maintenance supplies stored and used in compliance with Environmental Law, shall not use, produce, process, manufacture, generate, treat, handle, store, release or dispose of any Hazardous Material in, on or under the Property.

13. **AUTHORITY OF SIGNERS.** If Buyer or Seller is a legal entity rather than an individual, each Person executing and delivering this PSA or any Addendum or Counteroffer for it unconditionally and irrevocably warrants his or her authority to do so and to bind Buyer or Seller. Each of Seller and Buyer further warrant that the execution and delivery of this PSA by it has been duly and validly authorized, and all requisite actions have been taken to make this PSA valid, binding and enforceable upon it.

14. **COMPLETE CONTRACT.** This PSA together with any attached Addendum and Counteroffer, exhibit, and Seller Disclosures, constitutes the entire agreement between the Parties regarding the purchase and sale of the Property and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the Parties. This PSA cannot be changed except by written agreement of the Parties. Subject to the limitations on assignment expressly set forth in any Addendum or Counteroffer, this PSA shall inure to the benefit of and be binding on the Parties hereto and their respective heirs, legal representatives, successors and assigns.

15. **MEDIATION.** If the Parties have elected to mediate by checking the appropriate box in the Fundamental Terms, any dispute relating to this PSA that arises prior to or after Closing shall first be submitted to mediation. Mediation is a process in which the Parties meet with an impartial Person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The Parties to the dispute must agree in writing before any settlement is binding. The Parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the entire dispute is not resolved thirty (30) days from the date written notice requesting mediation is sent by one Party to all other Parties. If mediation fails, the other procedures, rights and remedies available to the Parties under this PSA shall apply. Nothing in this Section shall prohibit any Party from seeking emergency equitable relief pending mediation including, without limitation, an injunction.

16. **DEFAULT.** In the event of a default by Buyer, Seller shall be entitled, as Seller's sole and exclusive remedy, to terminate this PSA by written notice to Buyer, in which event the Earnest Money Deposit shall be paid to Seller as liquidated damages. In the event of a default by Seller, Buyer shall be entitled, at its option: (a) to terminate this PSA by written notice to Seller, in which event the Earnest Money Deposit shall be returned to Buyer and Buyer shall be entitled to and agrees to accept from Seller, a sum equal to the Earnest Money Deposit as liquidated damages; or (b) to enforce Seller's obligations under this PSA by a suit for specific performance. Upon termination of this PSA by either Party, no Party shall have any further rights, obligations, or liabilities hereunder except as expressly set forth in this PSA. The Parties acknowledge and agree that the actual damages upon default are uncertain in amount and difficult to ascertain, and that the amount of liquidated damages specified in this Section was reasonably determined.

17. **ATTORNEYS' FEES AND COSTS.** In the event of litigation or binding arbitration to enforce this PSA, the prevailing Party shall be entitled to costs and reasonable attorneys' fees. Attorneys' fees shall not be awarded for participation in mediation under Section 15.

18. **NOTICES.** All notices required under the PSA must be: (a) in writing; (b) signed by the Party giving notice; and (c) received by the other Party, the other Party's Agent or the other Party's Brokerage no later than the applicable date referenced in this PSA. Notices may be hand delivered, faxed, emailed, delivered by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express. If a notice is sent by electronic transmission, the burden of proving actual receipt will be on the sender.

19. **ABROGATION.** Except for the provisions of Sections 7, 9.2, 14, 15 and 16 and any other provisions of this PSA which expressly survive the termination of this PSA, the provisions of this PSA shall not be enforceable after Closing.

20. **RISK OF LOSS; EMINENT DOMAIN.** All risk of loss to the Property, including physical damage or destruction to the Property or its improvements due to any cause except ordinary wear and tear and loss caused by a taking in eminent domain, shall be borne by Seller until Closing. In the event of any destruction exceeding five percent (5%) of the Purchase Price or any taking or commencement of a taking by any governmental agency of a material portion of the Property, Buyer may, at Buyer's sole discretion, terminate this PSA by written notice to Seller within ten (10) days of notice of the commencement of taking or event of destruction, in which event all the Earnest Money Deposit, together with any interest accrued thereon, shall be promptly refunded to Buyer. If Buyer does not terminate this PSA, the insurance or condemnation proceeds, or right to collect the same, shall be paid or assigned to Buyer at Closing.

Seller's Initials_____ Date 7/2/    Buyer's Initials __CH__ Date 2/11/7

21.  TIME IS OF THE ESSENCE.  Time is of the essence regarding the dates set forth in this PSA, and any extension of the time for performance of any obligation or satisfaction of any condition must be agreed to in writing by all Parties. Unless otherwise explicitly stated in this PSA: (a) performance under this PSA which references a date shall absolutely be required by 5:00 P.M. Mountain Time on the stated date; and (b) the term "days" shall mean calendar days and shall and shall be counted beginning on the day following the event which triggers the timing requirement (i.e., deliver of a specified notice, etc.).  If the date for performance falls, or the deadline expires on a day which is not a Business Day, performance shall be required or the deadline shall expire on the next Business Day thereafter.  Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and other Persons which are not Parties, except as otherwise agreed to in writing by such Persons.

22.  ELECTRONIC TRANSMISSION AND COUNTERPARTS.  Facsimile (fax) or Email transmissions of a signed copy of this PSA, any Addenda and Counteroffers thereto, and the retransmission of any signed fax or Email shall be the same a delivery of an original, subject to confirmation of receipt by the other party thereto.  This PSA and any Addenda and Counteroffers thereto may be executed in counterparts.

23.  ACCEPTANCE.  "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) delivers to the other Party or to the other Party's Agent or Brokerage written acceptance of the offer or counteroffer by hand delivery, fax, email, delivery by certified mail, return receipt requested or by a national overnight courier service such as, but not limited to, Federal Express.  The burden of proving delivery will be on the sender.

24.  DEADLINES.  Buyer and Seller agree that Seller Disclosure Deadline, the Due Diligence Deadline and Settlement Deadline are as set forth in the Fundamental Terms, as modified by any Addendum hereto.

25.  1031 EXCHANGE.  Each Party shall cooperate with the other Party in effecting an exchange under Code Section 1031; provided however, that the other Party's cooperation shall be conditioned on the following: (a) the exchange will be at no additional liability and cost to the other Party; (b) the exchange will not delay Settlement or Closing; and (c) the other Party shall not be required to acquire title to any proposed exchange properties to accommodate an exchange.  The other Party shall not be required to acquire title to any proposed exchange properties to accommodate an exchange.  The exchanging Party shall indemnify, defend and hold the other Party harmless from and against any and all claims, demands, costs and expenses which the other Party may sustain or incur resulting from the attempt by the exchanging Party to consummate the sale or acquisition of the Property as a Section 1031 exchange.

26.  JOINT PREPARATION.  The provisions of this PSA have been negotiated by all Parties hereto and should therefore not be interpreted or construed in favor of or with prejudice against any particular Party, but in accordance with the general tenor of the language used.

27.  DEFINITIONS.  Certain capitalized terms previously used in this PSA are defined above.  In addition to those capitalized terms, the following capitalized terms shall have the following meanings:

"Agent" means Buyer's Agent or Seller's Agent, as applicable.

"Applicable Law" shall mean and include:  any and all laws, rules, regulations or ordinances of any governmental authority having jurisdiction over a specified matter, as the same may be in effect from time to time, including, without limitation, any Environmental Law.

"Brokerage" means Buyer's Brokerage or Seller's Brokerage, as applicable.

"Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday on which national banks in Utah are authorized by federal law to close.

"Code" shall mean the Internal Revenue Code of 1986, as amended, and the regulations issued thereunder.

"Counteroffer" means a Counteroffer signed by the Party making the Counteroffer to PSA, and to be attached to this PSA.

"Deed" means the form of Deed checked in the appropriate box on page 1 of this PSA in the Fundamental Terms.

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

"Due Diligence" means such investigations of and tests on or regarding the Property as Buyer deems necessary and appropriate.

"Effective Date" means the date both Seller and Buyer have executed this PSA and accepted Counteroffers and Addenda.

"Environmental Law" shall mean any federal, state, or local law, statute, ordinance, rule, or regulation pertaining to health, industrial hygiene, or the environmental conditions on or under the Property, or relating to releases, discharges, emissions, or disposals from the Property to air, water, soil, or groundwater, or relating to the withdrawal or use of groundwater, or relating to the use, handling, or disposal of polychlorinated biphenyls, asbestos, or urea formaldehyde, or relating to the treatment, disposal, storage, or management of Hazardous Material or relating to the transportation, storage, disposal, or management, including, without limitation, the Comprehensive Environmental Response Compensation, and Liability Act of 1980, as amended, and the Resource Conservation and Recovery Act of 1976, as amended, and all rules, and regulations, published pursuant thereto or promulgated thereunder.

"Fundamental Terms" means the Fundamental Terms of Offer to Purchase set forth on page 1 of this PSA as modified by an accepted Counteroffer or Addendum.

"Hazardous Material" shall mean and include, without limitation: (a) those substances included within the definitions of "hazardous substances" and "hazardous waste" in any Environmental Law; and (b) any material, waste, or substance which is or contains asbestos, polychlorinated biphenyls, petroleum and its derivative by-products, and oth explosive or radioactive materials.

"Knowledge" means the actual knowledge of a specified Person with the duty to investigate his or her files and records but without a duty of further inquiry.

"Monetary Liens" means each of the following to the extent arising by, through or under Seller: judgment liens, mortgages, deeds of trust, mechanic's liens, pre-construction liens, liens that secure the payment of money or credit, and liens or charges for delinquent taxes.

"Parties" means Seller and Buyer.

"Party" means Seller or Buyer.

"Person" means any natural individual human, any legal entity, a trust or the trustees of a trust acting in such capacity.

"Reference Date" means the date set forth in the Fundamental Terms on which the offer was prepared.

"Title Commitment" means a commitment issued by the Title Insurer for the Title Policy insuring the Owner's title in the Property in the full amount of the Purchase Price.

"Title Policy" means a standard 2006 ALTA Owner's Policy of Title Insurance issued by the Title Insurer.

**OFFER AND TIME FOR ACCEPTANCE. Buyer** offers to purchase the Property on the above terms and conditions. If Seller does not accept and deliver an acceptance of this Offer by 5:00 P.M. Mountain Time on Monday, July 3, 2017, this Offer shall lapse, and the Buyer's Brokerage or Escrow Agent, as applicable, shall return the Earnest Money Deposit to Buyer.

If Buyer is an individual or individuals:

_____
(Buyer's Signature)

_____
(Buyer's Name) (Please Print)

If Buyer is an entity:

_MW Development Enterprises, LLC_
(Name of Buyer)

_Delaware_
(State of formation and type of entity)

By: _____
(Signature)

Name: _Garrison Hassenflu_    [Printed name of signer]

Its: _Member_    [Position of signer within entity]

Address of Buyer for this Agreement:

Street Address: _2020 Broadway_

City, State, Zip Code: _Kansas City, MO 64108_

Phone: _____

Fax: _____

Email: _____

Seller's Initials _____ Date _7/2/17_

Buyer's Initials _____ Date _7/1/17_

**EARNEST MONEY RECEIPT**
(to be used if requested by Buyer or Seller)

The Buyer's Brokerage or Escrow Agent, as applicable, acknowledges receipt of the Earnest Money Deposit in the amount
of $ _____ .

Date: _____ , 20 _____

_____
[Name of Brokerage or Escrow Agent]

By:_____
(Signature above acknowledges receipt of Earnest Money Deposit)

Name:_____
[Printed name of signer]

Its:_____
[Position of signer within entity]

Seller's Initials _____ Date 2/2/17        Buyer's Initials _____ Date 2/1/17

## ACCEPTANCE/COUNTEROFFER/REJECTION

CHECK ONE:

[✓] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached Counteroffer No. _____.

[ ] **REJECTION:**    Date: _____, 20 _____.

If Seller is an individual or individuals:

_____
(Seller's Signature)

_____
(Seller's Name) (Please Print)

_____
Date

If Seller is an entity:

Windriver LC
_____
(Name of Entity)

Utah, LC
_____
(State of formation and type of entity)

By: _____
(Signature of authorized signer)

Name: Scott Miller
_____
[Print name of authorized signer]

Its: Vice President
_____
[Print position of signer within entity]

Date: 7/2/17
_____

Address of Seller for this Agreement:

Street Address: _____

City, State, Zip Code: _____

Phone: _____

Fax: _____

Email: _____

### DOCUMENT RECEIPT

State law requires Brokerage or Agent to furnish Buyer and Seller with copies of this PSA bearing all signatures. (Fill in applicable Section below.)

A.   I acknowledge receipt of a final copy of the foregoing PSA bearing all signatures:

_____          _____
(Signature of Buyer's Authorized Signatory)          (Date)


_____
[Printed name of signer]


_____          _____
(Signature of Seller's Authorized Signatory)          (Date)


_____
[Printed name of signer]

B.   I personally caused a final copy of the foregoing PSA bearing all signatures to be [  ] faxed [  ] Emailed [  ] mailed [  ] hand delivered on _____ (Date), postage prepaid, to the [  ] Seller [  ] Buyer.

Sent/Delivered by (specify):_____

_____          _____          _____
(Signature)          (Print Name of Signer)          (Date)

Seller's Initials _____ Date 7/2/17          Buyer's Initials _____ Date 7/1/17

## ADDENDUM TO PURCHASE AGREEMENT

**THIS IS AN ADDENDUM** (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1) Title Company will be:
   Alta Title Insurance Agency
   Attn: Michelle Liechty
   2180 South 1300 East #270
   Salt Lake City, Utah 84106
   (801) 545-7050 Phone
   (801) 545-7051 Fax
   michelle@altatitleutah.com

2) The Buyer shall have the right to extend the Due Diligence Period for two (2) consecutive thirty (30) day periods at a cost to Buyer of Ten Thousand Dollars ($10,000) per extension - If Buyer elects to extend the Due Diligence Period(s), then Buyer must provide written notice to Seller and deposit Ten Thousand Dollars ($10,000) into the title company's escrow account prior to the expiration of the Buyers initial due diligence period and an additional Ten Thousand Dollars ($10,000) for each extended Due Diligence period thereafter. It is understood that upon the expiration of the Due Diligence Period and any extension thereof, all Earnest Money within the title company's escrow account related to this deal will become immediately non-refundable, immediately released to Seller and credited to the Purchase Price at close.

3) It is understood by both Buyer and Seller that all Standard Exceptions to Title will deleted prior to Closing. It is also understood by both Buyer and Seller that at Settlement Sellers will pay for a Standard Title Policy - any additional coverage required by Buyer to ensure that all Standard Exceptions to Title are deleted prior to Closing or for any other reason of Buyer will be paid for by Buyer.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Monday, July 3, 2017 to accept or reject this Addendum.

_____          _____7/1/17_____
(Signature of Buyer's Authorized Signatory)          (Date)

_____Garrison Hassenflu_____
[Printed name of signer]

---

## ACCEPT / REJECTION / COUNTEROFFER

Check one

[✓] Accept [ ] Seller [ ] Buyer ACCEPTS the foregoing Addendum.
[ ] Counteroffer [ ] Seller [ ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. _____.
[ ] Rejection [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____          _____7/2/17_____
(Signature of Seller's Authorized Signer)          (Date)

_____Scott Miller_____
[Printed name of signer]

Page 13 of 13

Seller's Initials ____ Date 7/2/17          Buyer's Initials ____ Date 7/1/17

### ADDENDUM #2 TO PURCHASE AGREEMENT

THIS IS AN ADDENDUM (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1) Seller grants Buyer one (1) additional consecutive thirty (30) day Due Diligence Period extension option beyond the two (2) previously granted for a total of three (3) Due Diligence extensions options.  If Buyer elects to exercise its third (3rd) Due Diligence Period extension option, then Buyer must provide written notice to Seller as well as deposit Ten Thousand Dollars ($10,000) into the title company's escrow account prior to December 30, 2017.  If exercised, this third (3rd) Due Diligence extension period will begin on December 31, 2017 and end on January 29, 2018.

2) Buyer agrees that as of 5:00 P.M. Mountain Standard Time on October 31, 2017 Buyers initial Earnest Money Deposit of $25,000 became non-refundable and will be immediately released to the Seller.  Buyer further agrees that Buyer has exercised its first Due Diligence Period Extension and has provided written notice to Seller of its intent to do so and has deposited an additional $10,000 Earnest Money into Escrow - if Buyer does not cancel this contract in writing prior to 5:00 P.M. Mountain Standard Time on November 30, 2017 its additional Earnest Money Deposit of $10,000 will become non-refundable and will be immediately released to Seller.  Buyer also agrees that if Buyer exercises its second Due Diligence Period Extension by providing written notice to Seller of Buyers intent to do so and depositing an additional $10,000 Earnest Money into escrow on or before November 30, 2017 and Buyer does not cancel this contract prior to 5:00 P.M. Mountain Standard Time on December 30, 2017, then its additional Earnest Money Deposit of $10,000 will become non-refundable and will be immediately released to Seller.  Buyer further agrees that if it exercises its third Due Diligence Period Extension by providing written notice to Seller of its intent to do so and depositing an additional $10,000 Earnest Money into escrow on or before December 30, 2017 and Buyer does not cancel this contract prior to 5:00 P.M. Mountain Standard Time on January 29, 2018, then its additional Earnest Money Deposit of $10,000 will become non-refundable and will be immediately released to Seller.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control.  All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Monday, November 8, 2017 to accept or reject this Addendum.

_____    _____    _11/8/17_
(Signature of Buyer's Authorized Signatory)    (Date)

_Gerrison Hassenfla_
(Printed name of signer)

_____

### ACCEPT / REJECTION / COUNTEROFFER

Check one

[X] Accept [X] Seller [ ] Buyer ACCEPTS the foregoing Addendum.
[ ] Counteroffer [ ] Seller [ ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. ____.
[ ] Rejection [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_Carol S. Miller_    _11-8-2017_
(Signature of Seller's Authorized Signer)    (Date)

_Carol S. Miller_
(Printed name of signer)

Page 1 of 1

Seller's Initials _CM_ Date _11-8-17_                Buyer's Initials _____ Date _____

## ADDENDUM #3 TO PURCHASE AGREEMENT

**THIS IS AN ADDENDUM** (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1) Buyer agrees to exercise its third Due Diligence Period Extension by signing this Addendum with Seller and shall deposit an additional $10,000 Earnest Money into escrow on or before January 5, 2018. If Buyer does not cancel this contract prior to 5:00 P.M. Mountain Standard Time on January 31, 2018, then its additional Earnest Money Deposit of $10,000 will become non-refundable and will be immediately released to Seller.

2) The below Sellers signatures serve as acceptance of this Addendum #3 as well as acceptance of this PSA, reference dated June 27, 2017, in its entirety.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Monday, December 20, 2017 to accept or reject this Addendum.

_____        12/18/17
(Signature of Buyer's Authorized Signatory)         (Date)

_____ Garrison Hassenfl _____
[Printed name of signer]

---

### ACCEPT / REJECTION / COUNTEROFFER

**Check one**

[X]  **Accept** [X] Seller [  ] Buyer ACCEPTS the foregoing Addendum.
[  ]  **Counteroffer** [  ] Seller [  ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. ____.
[  ]  **Rejection** [  ] Seller [  ] Buyer REJECTS the foregoing ADDENDUM.

_____        12-18-17
(Signature of Seller's Authorized Signer)            (Date)

Robert C. Miller
[Printed name of signer]

_____        12-18-17
(Signature of Seller's Authorized Signer)            (Date)

Carol S. Miller
[Printed name of signer]

Seller's Initials _____ Date  12-18-17          Buyer's Initials _____ Date _____

## ADDENDUM #4 TO PURCHASE AGREEMENT

**THIS IS AN ADDENDUM** (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1) Buyer shall have the right to extend the Due Diligence period one (1) additional month.

The additional Due Diligence extension shall be through February 28th, 2018 and require Buyer to place an additional $10,000.00 Earnest Money Deposit at Alta Title Company by February 5, 2018. Once the $10,000.00 Earnest Money Deposit is received by Alta Title Company, its Agent Michelle Liechty shall immediately release the $10,000.00 Earnest Money Deposit along with any additional Earnest Money that is currently being held by Alta ~~Title~~ in _Title_ conjunction with this transaction to Seller. All released Earnest Money is considered completely non-refundable and will be credited to the purchase price at close. The Closing of this transaction will occur no-later than March 15, 2018.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Wednesday, January 31, 2018 to accept or reject this Addendum.

_____     _1/31/18_____
(Signature of Buyer's Authorized Signatory)          (Date)

_Garrison Hassenflu_
[Printed name of signer]

---

## ACCEPT / REJECTION / COUNTEROFFER

**Check one**

[X]  **Accept** [X] Seller [ ] Buyer ACCEPTS the foregoing Addendum.
[ ]  **Counteroffer** [ ] Seller [ ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. ____.
[ ]  **Rejection** [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____     _1/31/2018_____
(Signature of Seller's Authorized Signer)          (Date)

_Robert C Miller_
[Printed name of signer]

_Carol S. Miller_
(Signature of Seller's Authorized Signer)          _1/31/2018_____
                                                   (Date)
_CAROL S. MILLER_
[Printed name of signer]

Page 1 of 1

Seller's Initials _____ Date _1-31-2018_          Buyer's Initials _____ Date _____

## ADDENDUM #5 TO PURCHASE AGREEMENT

**THIS IS AN ADDENDUM** (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property:

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1) Buyer and Seller agree to exercise a fifth Due Diligence Period Extension by signing this Addendum. The Due Diligence Period shall be extended until March 31th, 2018. Buyer shall have an additional 15 days upon the expiration of the Due Diligence period to fund and close the transaction.

2) The signatures below shall serve as acceptance of this Addendum as well as acceptance and reinstatement of this PSA, reference dated June 27, 2017, in its entirety.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Monday, March 5, 2018 to accept or reject this Addendum.

_____     3/1/18
(Signature of Buyer's Authorized Signatory)          (Date)

_____
Garison Hassenflu
[Printed name of signer]

---

## ACCEPT / REJECTION / COUNTEROFFER

Check one

[✓] **Accept** [  ] Seller [  ] Buyer ACCEPTS the foregoing Addendum.
[  ] **Counteroffer** [  ] Seller [  ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. _____.
[  ] **Rejection** [  ] Seller [  ] Buyer REJECTS the foregoing ADDENDUM.

_____     3-2-2018
(Signature of Seller's Authorized Signer)          (Date)

Robert C. Miller
[Printed name of signer]

_____     3-2-2018
(Signature of Seller's Authorized Signer)          (Date)

Carol S. Miller
[Printed name of signer]

Seller's Initials _____ Date _____          Buyer's Initials _____ Date _____

THIS IS AN ADDENDUM #6 (the "Addendum #6") TO THAT CERTAIN PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE with a Reference Date of June 27, 2017 (the "PSA"), including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property: 4186 South Main Street, Millcreek, Salt Lake County, Utah 84107, County Tax Parcel #: 2101228015.

The following terms constitute an Addendum #6 to the PSA.

1) Buyer and Seller agree that prior to the signing of this Addendum #6 the PSA has expired and is no longer valid and in effect. However, the Buyer and Seller, by signing this Addendum #6 acknowledge the acceptance of this Addendum #6 and the reinstatement, acceptance and continuation of the PSA in its entirety including as amended by this Addendum #6.

2) Buyer acknowledges and agrees that Buyer has accepted the title and survey condition of the title of the Property as represented by the Title Commitment received by Buyer.

3) Within 48 hours of this Addendum #6 being fully executed, Buyer shall deposit an additional $10,000.00 of Earnest Money with Alta Title. Upon such additional Earnest Money deposit the Due Diligence Deadline shall be extended to July 31, 2018 at 5:00 P.M. If the PSA is not cancelled in writing by such extended Due Diligence Deadline, then the additional $10,000.00 Earnest Money Deposit shall become immediately and completely non-refundable and Michelle Liechty of Alta Title will immediately release that $10,000.00 Earnest Money Deposit to Seller without further authorization from the Buyer. All released Earnest Money is considered completely non-refundable and will be credited to the purchase price at the Closing if the Closing occurs.

4) The Settlement Deadline is agreed to be extended and the Settlement and Closing shall occur be on or before 5:00 p.m. Mountain Time August 15, 2018.

5) If Buyer fails to Fund and Close this transaction by 5:00 p.m. Mountain Time August 15, 2018, then Buyer and Seller acknowledge and agree that the PSA shall thereupon immediately expire and terminate and have no further force and effect for the Seller to sell the Property to Buyer and for the Buyer to purchase the Property. Upon such expiration and termination the Buyer has no further rights or entitlements in and to the Property and the Development Agreement for the Property with Millcreek, a Utah municipality, dated January 8, 2018 and all applications, rights, and entitlements under the Development Agreement for the Property.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Buyer shall have until 5:00 P.M. Mountain Time on June 27, 2018 to accept or reject this Addendum.

[Signature of Seller's Authorized Signatory]                    (Date) June 25, 2018

[Printed name of signer]   Robert C. Miller

[Signature of Seller's Authorized Signatory]                    (Date) June 25, 2018

[Printed name of signer]   CAROL S. Miller

**(Accept / Rejection / Counteroffer follow on next page.)**

### ACCEPT / REJECTION / COUNTEROFFER

**Check one**

[ ] **Accept** [ ] Seller [ ] Buyer ACCEPTS the foregoing Addendum.

[ ] **Counteroffer** [ ] Seller [ ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No _____

[ ] **Rejection** [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____          _____
(Signature of Buyer's Authorized Signer)          (Date)

_____
[Printed name of signer]

_____          _____
(Signature of Buyer's Authorized Signer)          (Date)

_____
[Printed name of signer]

Page 1 of 2

Seller's Initials _____ Date _____      Buyer's Initials _____ Date _____

ASSIGNMENT OF INTEREST IN REAL ESTATE CONTRACT

For consideration of goods and services, MW Development Enterprises, LLC, Garrison L. Hassenflu, Member, hereby assigns its rights and interests in the Purchase and Sale Agreement for Commercial Real Estate, which was fully executed July 2, 2017, and all subsequent addenda, between Windriver Investments, LLC and MW Development Enterprises, LLC to Millcreek Commons Housing, LLC.

Signed: _____          Date: ___9/12/18___

    Garrison L. Hassenflu, Member,
    MW Development Enterprises, LLC

Millcreek Commons Housing, LLC accepts the benefits and assumes the obligations of the above referenced Contract:

Millcreek Commons Housing, LLC

By: _____          Date: ___9/12/18___

Garrison L. Hassenflu, Member

September 22, 2018


Rinaldo Hunt
RH Brokerage Services, Inc.
Boise, ID 83716

      Re:  Purchase and Sale Agreement For Commercial Real Estate, Reference Dated June 27, 2017, by and between Windriver Investments LC and MW Development, LLC and Assigns for the approximately 7.05 acre of land located at 4186 South Main Street, Millcreek, Utah.

Dear Mr. Hunt:

Please consider this Letter written notice from the Seller "Windriver Investments LC" to the Buyer "MW Development, LLC and Assigns" that the above-mentioned Purchase and Sale Agreement For Commercial Real Estate, Reference Dated June 27, 2017 expired on September 21, 2018 as per Addendum #7 to the Purchase and Sale Agreement, and is no longer valid.

We thank you for your time and cooperation.

Best regards,
Colliers International


Rusty Bollow

Generated by Foxit PDF Software
http://www.foxitsoftware.com   For evaluation only.

Michelle Liechty

| | |
|---|---|
| **From:** | Rinaldo Hunt <rhunt@rhbrokerage.com> |
| **Sent:** | Monday, September 17, 2018 2:38 PM |
| **To:** | Bollow, Rusty |
| **Cc:** | bmiller ████████████ cmiller ████████████ com; Gary Hassenflu |
| **Subject:** | RE: 4186 South Main Street, Murray, Utah |

Rusty,

I just spoke with Gary regarding the close this week.  He indicated to me that he needs some more time.  Gary understands the graciousness of your clients' past extensions and he appreciates everyone's patience at this point.  Considering the additional request for more time, Gary is willing to place $25,000 of non-refundable earnest money with Alta Title by 9/28 with instructions to immediately release the deposit to the Sellers.  For the additional non-refundable deposit, Gary needs until November 9th to close on the transaction.  Please talk to your clients and let me know if this will be acceptable.  Thank you.

~~~~~~~~~~~~~~~~~~
Rinaldo Hunt
CA LIC #01353259
UT LIC #5750663-PB00
ID LIC #BR47399
MT LIC #63208

████████████████

Please consider the environment before printing this email!

NOTICE: This e-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential and may be legally privileged. It is intended to be conveyed only to the designated recipient(s).  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution or copying of this communication is strictly prohibited and that use, dissemination, distribution or reproduction of this message by unintended recipients is not authorized and may be unlawful. Please reply to sender that you have received the message in error, then delete it, then delete it from your deleted files folder. Thank you.

---

**From:** Michelle Liechty ████████████████
**Sent:** Wednesday, September 12, 2018 8:58 AM
**To:** Bollow, Rusty ████████████████; Gary Hassenflu ████████████████
**Cc:** Rinaldo Hunt <rhunt@rhbrokerage.com>; bmiller ████████████; cmiller ████████████
**Subject:** RE: 4186 South Main Street, Murray, Utah

Rusty,

As you requested, the form signed by both parties has been received,  and the check will be mailed today to the P.O.Box provided by the Sellers.

Thank you  Michelle

**MICHELLE LIECHTY**
**EXECUTIVE ESCROW OFFICER**
**EMAIL** ████████████████
**ALTA TITLE INSURANCE AGENCY**

1

Generated by Foxit PDF software
http://www.foxitsoftware.com   For evaluation only.

2180 SOUTH 1300 EAST , #270
SALT LAKE CITY, UTAH 84106
OFFICE   801-545-7050
FAX       801-545-7051
CELL      801-671-9475
Nikki  - Assistant

---

**From:** Bollow, Rusty
**Sent:** Wednesday, September 12, 2018 7:49 AM
**To:** Gary Hassenflu
**Cc:** Bollow, Rusty; Michelle Liechty; rhunt@rhbrokerage.com; bmiller                    ; cmiller
**Subject:** RE: 4186 South Main Street, Murray, Utah

Thanks Gary.  I appreciate you getting that turned around quickly.  How are your efforts to get financing
coming? Is there anything I can to do to help locally?

Let me know.  Thanks, Rusty

On Sep 12, 2018 7:35 AM, Gary Hassenflu                                    wrote:
All,

Please see attached.

Garrison "Gary" Hassenflu
MW and Garrison Companies
2020 Broadway Blvd.
Kansas City, MO 64108
c. 816-898-9285

www.garrisoncompanies.com

---

**From:** Bollow, Rusty
**Sent:** Tuesday, September 11, 2018 5:50 PM
**To:** Michelle Liechty                        ; 'rhunt@rhbrokerage.com' <rhunt@rhbrokerage.com>
**Cc:** Gary Hassenflu
bmiller                        cmiller
**Subject:** RE: 4186 South Main Street, Murray, Utah

Here you go Michelle.  Please let me know when Gary's copy is executed and your sending the check so I can make sure
the Millers know to look for it.  Rusty

**Rusty Bollow, MRED, CCIM**

Colliers International
111 South Main Street | Suite 2200

2

Generated by Foxit PDF software
http://www.foxitsoftware.com   For evaluation only.

Salt Lake City, UT 84111 | United States
www.colliers.com



---

**From:** Michelle Liechty ██████████████████
**Sent:** Tuesday, September 11, 2018 1:22 PM
**To:** Bollow, Rusty ██████████████████; 'rhunt@rhbrokerage.com' <rhunt@rhbrokerage.com>
**Cc:** Gary Hassenflu ██████████ cmiller ████
bmiller ████
**Subject:** RE: 4186 South Main Street, Murray, Utah

Rusty,

You are always most welcome

Have a good day.

Michelle

**MICHELLE LIECHTY**
**EXECUTIVE ESCROW OFFICER**
**EMAIL** ██████████████
**ALTA TITLE INSURANCE AGENCY**
**2180 SOUTH 1300 EAST , #270**
**SALT LAKE CITY, UTAH  84106**
**OFFICE   801-545-7050**
**FAX        801-545-7051**
**CELL       801-671-9475**
Nikki  - Assistant  ██████████████████

---

**From:** Bollow, ██████████████████
**Sent:** Tuesday, September 11, 2018 1:02 PM
**To:** Michelle Liechty; 'rhunt@rhbrokerage.com'
**Cc:** Gary Hassenflu ██████████████ bmiller ████████; cmiller ████████
**Subject:** RE: 4186 South Main Street, Murray, Utah

Thanks Michelle.

**Rusty Bollow, MRED, CCIM**
Senior Vice President
██████████████  +1 801 441 1205

**Colliers International**
111 South Main Street | Suite 2200
Salt Lake City, UT 84111 | United States
www.colliers.com

3

Generated by Foxit PDF Software
http://www.foxitsoftware.com   For evaluation only.



**From:** Michelle Liechty ███████████████
**Sent:** Tuesday, September 11, 2018 12:39 PM
**To:** 'rhunt@rhbrokerage.com' <rhunt@rhbrokerage.com>; Bollow, Rusty ████████████████████████
**Cc:** Gary Hassenflu ████████████████████
████████████████████     Street, Murray, Utah

Rinaldo and Rusty,

Please find attached the  Earnest Money release form to be signed by the parties to the transaction,  so we can release the remaining  E-M deposit we have received.

Please have it signed and returned.

Thank you  Michelle
**MICHELLE LIECHTY**
**EXECUTIVE ESCROW OFFICER**
**EMAIL** ██████████████████
**ALTA TITLE INSURANCE AGENCY**
**2180 SOUTH 1300 EAST , #270**
**SALT LAKE CITY, UTAH  84106**
**OFFICE    801-545-7050**
**FAX        801-545-7051**
**CELL        801-671-9475**
**Nikki   - Assistant** ████████████████

---

**From:** Michelle Liechty
**Sent:** Monday, September 10, 2018 2:55 PM
**To:** 'rhunt@rhbrokerage.com'; Rusty Bollow ████████████████████
**Cc:** Gary Hassenflu ███████████████████  bmiller ███████████  ; cmiller ███████████
**Subject:** 4186 South Main Street, Murray, Utah

Rinaldo and Rusty,

  We have received the additional   Earnest Money/ Extension funds in the amount of  $10,000.00 pursuant to Adden. No. 7.

  I will have the form completed and sent out for signatures,  to then release the funds,  per the Addendum.

Any questions, please let me know.

Thank you  Michelle

4

Generated by Foxit PDF Editor
http://www.foxitsoftware.com   For evaluation only.

**MICHELLE LIECHTY**
**EXECUTIVE ESCROW OFFICER**
EMAIL  ███████████

2180 SOUTH 1300 EAST , #270
SALT LAKE CITY, UTAH  84106
OFFICE    801-545-7050
FAX        801-545-7051
CELL        801-671-9475
Nikki   - Assistant   ███████████

Generated by Foxit PDF Software
http://www.foxitsoftware.com   For evaluation only.

Michelle Liechty

| | |
|---|---|
| **From:** | Gary Hassenflu |
| **Sent:** | Thursday, September 20, 2018 4:16 PM |
| **To:** | bmiller                cmiller |
| **Cc:** | camron                'Bollow, Rusty'; 'Rinaldo Hunt'; Michelle Liechty |
| **Subject:** | 4186 S. Main |

Mr. and Mrs. Miller,

Please accept this as a principal to principal communication.

I am fully aware of the closing deadline set for tomorrow on the above sale between my entity and yours. At this point, I am so close to the finish line. I have three investors/debt providers actively underwriting my file. As to the land and TIF financing, there are just ministerial items to complete, such as an amendment to the development agreement due to the land donation and the actual TIF agreement. I have paid architects, engineers, consultants, lawyers and have released over $95,000 of earnest money!  I am committed to this project. My debt and equity sources are in the process of finalizing third-party market studies, HUD applications and transactional documents that outline my deal with them.

Any seller should keep in mind that any new buyer would have A LOT of work to do and A LOT to decide before they move forward. There is no way to phase the project, so is a new buyer willing to pay $5.5MM on hopes that their lender and their investor will be ok with building 411 units in one phase? Or, would the new buyer revise the zoning/development agreement to do a phased project, which could take 6-9 months and NEVER get city approval now that are planned has been found acceptable? Another buyer will have to start, not from scratch with all of the work I did, but not that far off. The TIF resolution is in my name, so that would have to start over. They would have to engage different counsel since there would be a conflict of interest, otherwise. They would have to be ok with DONATING the same land area (40% of the site) that I agreed to with the City. They would have to go back through hearings on the rezoning/development agreement since that is in my name. They would have to engage their own engineer, architect, traffic engineer since they could not engage mine or use my work as it is partly owned by me. They would have to get enough design and engineering work done to get a cost estimate worth a darn….that takes time!

Considering this deal has only been baked for roughly 60 days and it is a $80MM development project, doesn't it make more sense to ride with a buyer (me) that has all of this in place for another 45 days? 45 more days for a project of this size is NOT that long of a time to get money from a date of full land and development entitlement. AND, keep in mind that I am willing to deposit $35,000 (that's right, $35,000, rather than $25,000 offered previously), applied to the purchase price, but otherwise non-refundable and released immediately, to extend the contract to 11/9/18. The deposit would be due and payable 9/28/18. These are significant dollars and dollars commensurate with the extra time requested on a transaction of this size.

I'd be happy to engage in a phone conference to discuss this matter further with you. If you would like to call me directly, please call my cell since I can be reached more easily at that number.

Garrison "Gary" Hassenflu
MW and Garrison Companies
2020 Broadway Blvd.
Kansas City, MO 64108

www.garrisoncompanies.com

## ADDENDUM #7 TO PURCHASE AGREEMENT

**THIS IS AN ADDENDUM** (the "Addendum") to that PURCHASE AND SALE AGREEMENT FOR COMMERCIAL REAL ESTATE (the "PSA") with a Reference Date of June 27, 2017, including all other Addenda and Counteroffers thereto, between Buyer and Seller (as described in the Fundamental Terms) pertaining to the following Property: 4186 South Main Street, Millcreek, Salt Lake County, UT 84107, County Tax Parcel #: 21-01-228-015

The following terms constitute an addendum (the "Addendum") to the specified terms in the PSA or identified Addendum.

1. The signatures below shall serve as acceptance of this Addendum as well as acceptance and reinstatement of this PSA, reference dated June 27, 2017, in its entirety.

2. Buyer will have until September 21, 2018 to Fund and Close this transaction. Upon the execution of this Addendum #7, Buyer shall deposit an additional $10,000.00 of Earnest Money with Alta Title by August 22th 2018 and an another $10,000 by September 7th, 2018. Upon the Title Company's receipt of the Earnest Money Deposits, its Agent Michelle Liechty shall immediately release each Earnest Money Deposit to Seller. All released Earnest Money is considered completely non-refundable and will be credited to the purchase price at close.

To the extent the provisions of this Addendum modify or conflict with any provisions of the PSA and all other Addenda and Counteroffers, the provisions of this Addendum shall control. All other provisions of the PSA and all other Addenda and Counteroffers not modified by this Addendum shall remain in full force and effect.

Seller shall have until 5:00 P.M. Mountain Time on Tuesday, August 21, 2018 to accept or reject this Addendum.

_____     _____8/17/18_____
(Signature of Buyer's Authorized Signatory)            (Date)

_____Garrison Hassenflu_____
[Printed name of signer]

---

### ACCEPT / REJECTION / COUNTEROFFER

Check one

[X] Accept [X] Seller [ ] Buyer ACCEPTS the foregoing Addendum.
[ ] Counteroffer [ ] Seller [ ] Buyer presents as a COUNTEROFFER the terms of attached Addendum No. _____.
[ ] Rejection [ ] Seller [ ] Buyer REJECTS the foregoing ADDENDUM.

_____     _____8-21-2018_____
(Signature of Seller's Authorized Signer)            (Date)

_____Robert C. Miller_____
[Printed name of signer]

_____     _____8-21-2018_____
(Signature of Seller's Authorized Signer)            (Date)

_____Carol S. Miller_____
[Printed name of signer]

Page 1 of 1

Seller's Initials _RM_ Date _8-21-2018_        Buyer's Initials _RM_ Date _8-21-2018_

EXHIBIT C

**ADA COUNTY
SHERIFF'S OFFICE**

**Ada County Sheriff's Office Civil Division**          **7180 Barrister Dr. Boise, ID 83704**
Phone: 208-577-3750          Fax: 208-577-3759

**10/10/2019**                                                              Sheriff's # 19013796
ALISHA LIN; DENNIS LIN                    VS                    RINALDO HUNT; MAILE HUNT; RH BROKERAGE SERVICES
INC

ADA COUNTY                                                              Case # CV011913125

Sheriff's return on Writ of Execution                          Received by Sheriff on: 09/16/2019

I certify that a copy of the Writ of Execution was served on 09/18/2019 at 2:38 pm to:

RINALDO HUNT; MAILE HUNT % ANGSTMAN JOHNSON199 N CAPITOL BOULEVARD SUITE 200    BOISE ID 83702

Method of service: Substitute

On 9/18/2019 a Claim of Exemption and required documents were mailed to:
       RINALDO HUNT; MAILE HUNT 3812 S MILL SITE LN BOISE ID 83716

On 09/18/2019 Deputy Pirnie completed a cash demand and received $157.40

On 09/18/2019, the Ada County Sheriff's Office levied upon A ROLEX WATCH, A DIAMOND ENGAGEMENT RING, A PAVE MIX
JEWEL EARRINGS, A DIAMOND TENNIS BRACELET, A GREEN TOURMALINE RING, A ROBERTO COIN DIAMOND RING,
SAPPHIRE EARRINGS, and A MINK COAT, all as described by the plaintiff, and a Sheriff's sale was scheduled for 10/10/2019.

Sheriff's sale notices were posted on 10/03/2019 at the following locations:
   • Fred Meyer: 5230 W. Franklin Rd. Boise, ID 83705
   • Fred Meyer 5425 W. Chinden Blvd. Garden City, ID 83714
   • Ada County Sheriff's Office: 7180 Barrister Dr., Boise, ID 83704

I further certify that at the time and place of the aforementioned sale, the Ada County Sheriff's Office sold the previously described
personal property and now render the following statement, to wit:

| | | | |
|---|---|---|---|
| Opening judgment balance | $153,508.56 | Returned to defendant | $0.00 |
| Total interest accrued | $839.04 | Fees disbursed | $192.30 |
| Total 3rd party fees | $192.30 | Advance fees paid by plaintiff | $205.00 |
| Total sheriff's fees | $269.52 | Disbursed to plaintiff | |
| Subtotal | $154,809.42 | Applied to judgment | $3,132.88 |
| Sheriff's Sale Proceeds | $(3,437.30) | Advance fee return | $205.00 |
| Credit Bid | $(1,125.00) | Total disbursed | $3,337.88 |
| Amount Paid by Defendant | $(157.40) | Fees due from plaintiff | $0.00 |
| **Final judgment balance** | $150,089.72 | | |

I return the Writ of Execution, served, and assess fees at $461.82.    **Paid by advance fees.**

STEPHEN BARTLETT
Ada County Sheriff

By Deputy Barbara Wanner

MCCONNELL WAGNER SYKES + STACEY PLLC
827 E PARK BLVD  STE 201
BOISE ID 837120000

EXHIBIT D



# HAL DAVIS
J E W E L E R S

## JEWELRY INSURANCE APPRAISAL

THIS APPRAISAL IS BEING ISSUED BY A CERTIFIED GEMOLOGIST OR REGISTERED JEWELER OF THE AMERICAN GEM SOCIETY, AN ELITE GROUP OF GEMOLOGICALLY-TRAINED PROFESSIONAL JEWELERS WHO SUBSCRIBE TO A STRICT CODE OF ETHICS. GREAT CARE HAS BEEN TAKEN TO PROVIDE YOU WITH COMPLETE DESCRIPTIONS OF YOUR JEWELRY AND ACCURATE ESTIMATED RETAIL VALUES.
**NO PART OF THIS APPRAISAL CAN BE MADE PUBLIC WITHOUT EXPRESS WRITTEN APPROVAL FROM HAL DAVIS JEWELERS**

MR. & MRS. RINALDO HUNT                    SEPTEMBER 9, 2019
3812 S. MILL SITE LANE                            DOCUMENT- HUNT
BOISE, ID 83716

### ITEM 1

ONE ROLEX OYSTER PERPETUAL WATCH, 31 MM STAINLESS STEEL, DOMED BEZEL, 31 JEWEL CHRONOMETER PERPETUAL MOVEMENT, SYNTHETIC SCRATCH RESISTANT SAPPHIRE CRYSTAL WITH SCREW DOWN TWINLOCK DOUBLE WATERPROOF SYSTEM, SILVER ARABIC DIAL WITH PINK INDEX MARKERS AND A STAINLESS-STEEL OYSTER FLAT THREE PIECE LINK BRACELET. WATERPROOF TO 100 METERS (330 FEET).

ROLEX STYLE NUMBER 177200

ROLEX SERIAL NUMBER Z70D923

ROLEX BRACELET NUMBER 70160

**ESTIMATED REPLACEMENT VALUE**………………………………………...……………..$4,950.00

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

### ITEM 2

ONE (1) 18 KARAT WHITE GOLD CUSTOM DESIGNED DIAMOND ENGAGEMENT RING WEIGHING APPROXIMATELY 5.67 GRAMS. THIS RING HAS ONE (1) PRONG SET CUSHION CUT DIAMOND MEASURING 7.78 X 6.6 – 4.68 MM AND WEIGHS 2.01 CARATS WITH GIA PROVISIONAL GRADING OF G COLOR AND VVS1 CLARITY WITH GOOD SYMMETRY AND POLISH WITH MEDIUM BLUE FLUORESCENCE. ACCENTED AROUND THE CENTER DIAMOND AND IN THREE ROW BAND ARE EIGHTY TWO (82) FULL CUT DIAMONDS ALL HAVING G COLOR AND VS CLARITY WITH A TOTAL WEIGHT OF 0.79 CARATS.

**ESTIMATED REPLACEMENT VALUE**………………………………………...……………..$29,575.00

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

## ITEM 3

ONE (1) PAIR OF LADIES 18 KARAT WHITE GOLD DIAMOND AND SAPPHIRE EARRINGS. THE MOUNTINGS ARE CRAFTED FROM EIGHTEEN CARAT WHITE GOLD. THE STYLE IS CRAFTED FROM PAVE SET DIAMOND HINGED HOOPS AND A REMOVABLE CHARM OF DIAMOND AND COLORED SAPPHIRES.   THE HINGED HOOP EARRINGS ARE ENTIRELY PAVE SET WITH ROUND BRILLIANT CUT DIAMONDS. THE DIAMONDS HAVE AN ESTIMATED COLOR OF G AND AN AVERAGE CLARITY GRADE OF SI1. THE TOTAL DIAMONDS WEIGHT OF HOOPS IS 0.84 CARATS TOTAL WEIGHT. THE REMOVABLE CHARM   HAS A PAVE "UMBRELLA" DESIGN WITH ROUND CUT LIGHT BLUE NATURAL SAPPHIRES AT THE BASE OF THE DIAMONDS. THE ESTIMATED TOTAL WEIGHT OF THE TOP PORTION OF THE CHARM IS 1.10 CARATS. THE DIAMONDS ARE G COLOR AND SI1 CLARITY. THERE ARE THREE TIERS OF PASTEL COLORED BRIOLETTE CUT SAPPHIRES EACH MEASURING APPROXIMATELY 6.0 X 4.5 MM. THE GEMSTONE AT THE BOTTOM IS SLIGHTLY LARGER MEASURING 7.0 X 4.5 MM.

**ESTIMATED REPLACEMENT VALUE...............................................................$8,750.00**

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

## ITEM 4

ONE (1) LADIES 14 KARAT WHITE GOLD AND DIAMOND TENNIS BRACELET WEIGHING 11.35 GRAMS AND MEASURING APPROXIMATELY SEVEN INCHES LONG WITH FORTY FOUR (44) ROUND BRILLIANT CUT DIAMONDS EACH MEASURING 2.6 MM AND HAVING GIA PROVISIONAL GRADING OF G COLOR AND VS1 CLARITY WITH A COMBINED TOTAL WEIGHT OF 3.08 CARATS.

**ESTIMATED REPLACEMENT VALUE...............................................................$5,298.00**

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

## ITEM 5

ONE (1) LADIES GREEN TOURMALINE AND DIAMOND RING MADE FROM 18 KARAT WHITE GOLD WEIGHING APPROXIMATELY 10.15 GRAMS. THE RING HAS A PRONG SET PEAR SHAPED GREEN TOURMALINE MEASURING 15.0 X 10.7 - 8.7 MM AND WEIGHING 7.98 CARATS. AROUND THE CENTER STONE ARE ONE HUNDRED AND TWENTY TWO (122) BEAD SET DIAMONDS WITH MILGRAIN FINISH. DIAMONDS ALL MEASURE 1.3 MM WITH G COLOR AND VS1 CLARITY WITH A COMBINED TOTAL WEIGHT OF 1.22 CARATS.

**ESTIMATED REPLACEMENT VALUE...............................................................$18,990.00**

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

## ITEM 6

ONE (1) DESIGNER ROBERTO COIN "CLASSICA COLLECTION" 18 KARAT WHITE GOLD LADIES DIAMOND RING WEIGHING 6.24 GRAMS. THE MOUNTING IS INSET IN BAR STYLE SETTING WITH A TOTAL OF TWENTY SEVEN (27) ROUND BRILLIANT CUT DIAMONDS MEASURING 2.2 - 3.0 MM ALL WITH GIA PROVISIONAL GRADING OF G COLOR AND VS1 CLARITY WITHA. COMBINED TOTAL WEIGHT OF 1.90 CARATS. THE RING FEATURES A ROBERTO COIN TRADE MARK ROUND RUBY FLUSH SET INTO THE INSIDE OF THE RING.

**ESTIMATED REPLACEMENT VALUE**.................................................................**$7,100.00**

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

## ITEM 7

ONE (1) PAIR OF LADIES 14 KARAT WHITE GOLD, DIAMOND, AND SAPPHIRE EARRINGS WEIGHING 3.50 GRAMS. EACH EARRING HAS A PRONG SET OVAL SAPPHIRE CENTER STONE MEASURING APPROXIMATELY 7.8 X 5.4 - 3.7 MM AND WEIGHS 1.24 CARATS WITH MEDIUM LIGHT TO MODERATELY STRONG VIOLETISH BLUE COLOR WITH VS CLARITY WITH A COMBINED SAPPHIRE WEIGHT OF 2.48 CARATS. AROUND THE CENTER STONE ARE A TOTAL OF TWENTY (20) ROUND BRILLIANT CUT DIAMONDS IN A HALO FASHION EACH MEASURING 1.1 MM WITH GIA PROVISIONAL GRADING OF G COLOR AND VS2 CLARITY WITH A COMBINED TOTAL WEIGHT OF 0.20 CARATS.

**ESTIMATED REPLACEMENT VALUE**.................................................................**$8,836.00**

**REPLACEMENT VALUE DOES NOT INCLUDE SALES TAX**

CUSTOMER COPY

APPRAISER

KARA DULHANTY, CSA
AMERICAN GEM SOCIETY

**FUR GALLERY**

## Fur Appraisal

Tel: (907) 747-8870
Fax: (907) 747-1494

**No. 28204**

Date 9/2/2014

### Sitka Fur Gallery

108 Lincoln Street
Sitka, Alaska 99835

## This is to Certify:

THAT WE HAVE THIS DAY EXAMINED AND APRAISED THE

DYED BLACK, SHEARED FULL LET OUT MINK SKINS,
STROLLER WITH LONG HAIR MINK TUXEDO, CUFFS AND
COLLAR, REVERSABLE TO RAINWEAR

Fur Origin: USA
Style: CH9954R
Length: 32"      Sweep: 52"      Size: 10

FOR       RINALDO  HUNT
          1420 EAST KINSINGTON AVE
          SALT LAKE CITY, UTAH 84105

AND HAVE DETERMINED ITS PRESENT RETAIL VALUE TO BE
FOR INSURANCE PURPOSES ONLY:

$    9,995.00

---

PO Box 2670, 537 Main Street
Park City, UT 84060
Tel (435) 649-1241 | Fax (435) 649-1242

108 Lincoln Street
Sitka, AK 99835
Tel (907) 747-8870 | Fax (907) 747-1494

312 Mission Street
Ketchikan, AK 99901
Tel (907) 225-8870 | Fax (907) 225-8871

135 North Cache Avenue
Jackson, WY 83001
Tel (307) 733-4772 | Fax (307) 733-4759

Toll Free (888) 649-3820 | e: alaskafurgallery_parkcity@att.net | www.akfur.com